# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AMY TRINETTE WASHINGTON,

                                        Case No. 1:14-cv-794

                Plaintiff,                      Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## MEMORANDUM OPINION

Plaintiff Amy Washington filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.  The Commissioner filed a response, to which Plaintiff filed a reply.  The parties have consented to disposition by the undersigned magistrate judge pursuant to 28 U.S.C. §636(c).  As explained below, the ALJ's finding will be REVERSED, because it is not supported by substantial evidence in the administrative record.

## I. Background

On August 31, 2011, Plaintiff filed an application for supplemental security income ("SSI") benefits, alleging a disability onset of the same date.  Her application was denied initially and upon reconsideration, following which Plaintiff sought an evidentiary hearing.  A hearing was on April 25, 2013 in Cincinnati, Ohio before Administrative Law Judge ("ALJ") Vincent A. Misenti, at which Plaintiff appeared with counsel and presented testimony. (Tr. 37-79).  A vocational expert also appeared and testified by videoconference.  On May 20, 2013, ALJ Misenti filed a written decision in

which he determined that, despite several severe impairments, Plaintiff remained capable of full-time employment and therefore was not disabled. (Tr. 21-31). The Appeals Council denied further review, leaving the ALJ's decision as the Commissioner's last decision.

Born in 1969, Plaintiff was 43 years old and considered a "younger individual" when her application was filed and on the date of the ALJ's decision. She has a high school education, earned an Associate's degree in 2004 after two years of college (Tr. 313), and has past relevant work as a nurse's aide and dialysis technician, which there is no dispute she can no longer perform. (Tr. 29, 200-201). Plaintiff testified that she became unable to work after an accident in 2001, when she was slammed between school bus doors and her body was twisted, causing her back injury.[1] (Tr. 25, 313).

Plaintiff alleges that she is disabled due to a combination of physical and mental impairments, including severe and chronic pain from her longstanding back injury, related muscle spasms, arthritis, migraines, numbness, depression and anxiety. (Tr. 195, 213). At the hearing, she testified that she was disabled because of pain in her back, legs, and feet; numbness and tingling in her hands, fingers and shoulders; depression and anxiety. (Tr. 44-45). She testified that she uses a TENS unit daily, but that she did not follow through with recommended surgery due to the risks involved. (Tr. 46-47).

The ALJ agreed that Plaintiff had not engaged in substantial gainful activity since 2001, and that she had severe impairments of "cervical and lumbosacral degenerative disc disease, anxiety and depression." (Tr. 23). However, he found that Plaintiff's

---

[1]The record refers to a prior adverse disability determination dated July 24, 2006. (Tr. 94). Her prior application alleged fibromyalgia, degenerative disc disease, arthritis and depression. (*Id.*). While that decision does not appear in the administrative record, it is *res judicata*, to the extent that Plaintiff was not disabled through July 24, 2006. (Tr. 96, 103). However, the Commissioner acknowledged the existence of new and material evidence following the date of the last decision. (Tr. 96).

severe impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, a determination that Plaintiff does not challenge here. (*Id.*). Instead, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") for a limited range of sedentary work, as follows:

> [T]he claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; no climbing of ladders, ropes, and scaffolds; able to understand, remember, and carry out simple, routine, and repetitive tasks; not able to perform at a production rate pace; able to perform goal oriented tasks; limited to simple work related decisions; occasional social interaction with co-workers, supervisors, and the public; and can tolerate few changes in a work routine setting, defined as working in a static environment.

(Tr. 25).

Based upon responses provided by the vocational expert, the ALJ found that Plaintiff could perform a number of representative jobs, including packer or inspector. (Tr. 30). Therefore, the ALJ found that Plaintiff was not under a disability between August 31, 2011 and the date of his decision. (*Id.*). The Appeals Council denied Plaintiff's request for further review, and she timely filed this judicial appeal. In her Statement of Errors to this Court, Plaintiff argues that the ALJ erred: (1) by failing to give "good reasons" for rejecting the opinions of two treating physicians; (2) by giving the greatest weight to the opinions of consultants who lacked access to the complete record; and (3) by misstating a psychological consultant's opinion. While not stated as a separate error, Plaintiff also criticizes the ALJ's adverse credibility assessment.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to

prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, this Court must affirm even if the Court itself might have reached a different conclusion in reviewing the same evidence. As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

4

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B.  Relevant Medical Evidence

#### 1.  Evidence Concerning Physical Impairments

Although Plaintiff's initial injury occurred and she quit work in 2001, she did not begin receiving regular treatment for her back condition until 2007, following x-rays and an MRI, as well as an EMG test. In June of 2007, Plaintiff's family physician, Dr. Jose Martinez, opined that Plaintiff had very severe functional limitations and was unemployable for twelve months or more. (Tr. 295). Dr. Martinez referred Plaintiff to physical therapy and to a pain management specialist, Dr. C. Duane Bellamy. In July 2007, in February 2009, and again in April and May 2012, Dr. Bellamy administered epidural steroid injections. (Tr. 301-302, 310, 430, 437-440).

In February 2009, a treating physician at the Winton Hills Medical Center (signature illegible) opined that Plaintiff could sit, stand, or walk for only four hours in an 8-hour workday, but not for more than 15 minutes at one time. The same physician opined that she could lift and carry up to five pounds frequently and ten pounds occasionally, and was extremely limited in her ability to perform repetitive foot

movements, markedly limited in her ability to bend, moderately limited in her ability to push, pull, or reach, and unemployable for twelve months or more. (Tr. 307-308). Plaintiff continued with physical therapy in the spring of 2009.

Plaintiff continued to undergo physical therapy from April through September 2011. She sought emergency room treatment for conditions relating to her back pain in July and December 2011.

On February 3, 2012, Plaintiff was examined by orthopedic specialist Ferhan Asghar, M.D., who recommended surgery. (Tr. 409-416). Concerned with the serious risks of such surgery, which Plaintiff testified involved a "definite[]" loss of "30 percent" of the nerves in both arms, as well as possible paralysis or even death, Plaintiff declined to proceed. (Tr. 46-47).

Following her last steroid injection by Dr. Bellamy in May 2012, Plaintiff did not return for additional treatment until April 2013 when she saw podiatrist Rodney Roof, D.P.M., for foot pain presumed to be related to her back condition. (Tr. 458-459). Dr. Roofe administered a nerve block injection and advised Plaintiff to wear special shoes. (*Id.*). His office notes indicate that Plaintiff was "pleased with treatment and progress." (Tr. 459).

In addition to the above records, Plaintiff relies on multiple pages in the administrative record – primarily concerning her back condition – that were not submitted to the ALJ. (*See e.g.* Tr. 460-527). The referenced records include a significant number of records from treating physicians such as Drs. Foote and Bellamy, as well as ER records, University Hospital records, and a second detailed functional assessment by Ms. Lear. However, the Commissioner persuasively argues that none of the referenced records can be reviewed by this Court since they were presented for

the first time to the Appeals Council.  The Appeals Council declined to review them based upon a conclusion that they were not new and material.  *See Cline v. Com'r of Soc. Sec.*, 96 F.3d 146, 148-149 (6th Cir. 1996).

It is the decision of the ALJ and therefore the facts before the ALJ that are subject to appellate review, not the subsequent decision of the Appeals Council. *Cotton v. Sullivan, 2* F.3d 692, 695–96 (6th Cir.1993).  Conceding that legal point, in her reply Plaintiff attempts to avoid its impact by arguing that this Court should remand under Sentence Six of 42 U.S.C. §406(g).  In her original Statement of Errors, Plaintiff sought remand only under Sentence Four.  A Sentence Six remand requires different proof than remand under Sentence Four, including proof that the evidence is "new and material" and there was "good cause" for not having submitted it to the ALJ. Notwithstanding Plaintiff's contention that the referenced evidence meets the "new and material" criteria and were not available at the time of the hearing, the undersigned declines to consider this argument because Plaintiff should have presented it in the Statement of Errors, not for the first time in her reply.  On the other hand, nothing prevents the Plaintiff from requesting review of the additional evidence in the context of the Sentence Four remand that is granted in this Opinion.

### 2.  Evidence Concerning Mental Impairments

Plaintiff has never undergone any significant mental health treatment, other than obtaining a prescription for medication through her family physician.

Plaintiff underwent a consultative examination in January 2011 by Jeanne Spadafora, Ph.D.  Dr. Spadafora assessed a major depressive disorder and adjustment disorder with anxiety.  (Tr. 312-318).  A second consultant, Brian Griffiths, Psy. D., examined Plaintiff in October 2011.  (Tr. 363-369).  Dr. Griffiths also assessed major

depressive disorder as well as post-traumatic stress disorder. Both Dr. Spadafora and Dr. Griffith determined Plaintiff's Global Assessment of Functioning ("GAF") to be 55, consistent with moderate symptoms.

## C. Errors Alleged By Plaintiff

### 1. Standards Applicable to Medical Opinion Evidence

Plaintiff first argues that the ALJ failed to give good reasons for rejecting the opinions of her treating physicians, primarily Dr. Foote and to a lesser extent, Dr. Martinez. Plaintiff's second claim asserts that the ALJ improperly gave greater weight to the opinions of consulting physicians, particularly Dr. Fritzhand. Both errors require review of the regulatory framework applicable to opinion evidence.

The regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d

399, 406 (6th Cir. 2009). If an ALJ fails to give controlling weight to the opinions of a treating physician, he must provide "good reasons" and explain what weight he is giving to the opinions. 20 C.F.R. §404.1527(c)(2).

In addition to the guidelines applicable to the evaluation of the opinions of treating physicians, the regulatory framework provides guidelines for the evaluation of the opinions of consulting physicians. In general, the opinions of a consulting physician or psychologist who has actually examined the plaintiff will be given more weight than that of a non-examining consultant, although only treating physicians are entitled to controlling weight. *See* 20 C.F.R. §404.1527(c)(1) and (c)(2).

In *Blakley* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). While an ALJ may not rejected a treating physician opinion solely based on the conflicting opinions of non-examining consultants, *see Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), no reversible error occurs when an ALJ determines that a treating physician opinion is not entitled to controlling weight because it is not well-supported, is internally inconsistent, and/or is inconsistent with the record as a whole.

### 2. Physical Limitations Opinion Evidence

### a. Dr. Foote and Dr. Martinez

Plaintiff began treating with Dr. Foote in 2011[2] at the Winton Hills Health Center, and continued to see him at Drake and/or University Hospital in 2012. (Tr. 400, 402, 406, 426). He ordered an MRI of Plaintiff's neck, which showed advanced multilevel

---

[2]Plaintiff cites Tr. 402 as indicating an initial visit in May 2011 but the undersigned was unable to verify the date from the referenced record.

spondylosis for her age, with evidence of nerve root compression and multilevel stenosis. (Tr. 400, 406-408).

Dr. Foote expressed his opinions concerning Plaintiff's functional limitations in a Medical Assessment of Ability to Do Work-Related Activities (Physical) dated April 11, 2012. (Tr. 422-425). Dr. Foote's opinions were based in large part on a detailed functional examination performed by physical therapist Cynthia Lear on March 16, 2012. Dr. Foote and Ms. Lear agreed that Plaintiff could stand and walk for 2 hours total in an 8-hour workday, but only for 5 minutes without interruption, and that she could sit for not more than 3 hours total in an 8-hour day even if provided with a sit/stand option. (Tr. 423). Dr. Foote opined that Plaintiff's limitations were caused by pain, which he believed was objectively supported by MRI evidence showing cord compression. He further found that any repetitive or sustained activity increased her symptoms and that she was likely to miss more than 8 days of work per month. (Tr. 424).

Plaintiff also relies in part on the 2007 opinions of her prior treating family physician, Dr. Martinez, who opined similarly to Dr. Foote that Plaintiff suffered from extreme and disabling functional limitations. (Tr. 307-308). Another treating physician (name illegible) from the Winton Hills Health Center also completed an assessment form in which he/she opined that Plaintiff has extreme and disabling limitations. (Tr. 428-429).

The ALJ gave "little weight" to Dr. Foote's assessment for the following reasons: "These opinions are simply not supported by the medical record, including the claimant's lack of any treatment for the past year, and her absence of any history of surgery or hospitalization for her back and neck pain. For example, in December of 2011, the claimant was noted as not having any objective weakness on physical

10

examination." (Tr. 29). The ALJ gave the same "[l]ittle weight" to a similar assessment of a second treating physician, Dr. Martinez, who completed his assessment for Ohio Job and Family Services, citing the "same reasons." (Tr. 29). In addition, the ALJ stated that the "marked" and "extreme" limitations found by Dr. Martinez were "inconsistent with her unremarkable physical examination findings and conservative treatment history." (*Id.*).

Plaintiff contends that the ALJ committed reversible error by failing to give "good reasons" for rejecting the opinions of both treating physicians. In addition, Plaintiff argues that the ALJ committed clear error by failing to acknowledge in his opinion that Dr. Martinez was a treating physician prior to giving his report "little weight."

I agree that the ALJ erred by failing to provide "good reasons" for rejecting the opinions of both treating physicians, and by failing to support his analysis and conclusions with reference to substantial evidence in the record as a whole. The fact that Plaintiff declined surgery based upon the unacceptable risk to her health, which included paralysis and the possibility of death, and therefore limited herself to "conservative" treatment, is not grounds for rejecting the treating physician opinions. Plaintiff's treatment included use of a TENS unit, steroid injections, and physical therapy. (Tr. 301, 451). The ALJ seems to have taken a view that treatment short of surgery is incompatible with disability, a viewpoint that is not supported by any controlling authority.

Plaintiff explained that she continually sought relief from her back and neck pain, despite limited financial resources, for many years. After exhausting all other options, only surgery remained, which she declined based upon the risks as she

understood them.[3]  While it is true that she did not seek new treatment for the better part of a year after declining surgery, it does not appear that further treatment other than surgery was either recommended or available.  She also testified that she continued to use a TENS unit, a heating pad, and muscle relaxants and pain medications.  Thus, Plaintiff offered a reasoned explanation (both financial and based upon exhaustion of all non-surgical options) for her failure to pursue additional treatment after declining surgery.

In short, Plaintiff underwent every non-surgical course of treatment offered to her. Objective evidence, including the January 2012 MRI, showed multilevel spondylosis, moderate to severe foraminal stenosis at several cervical levels, including "mild to moderate" cord compression at C4-5 and moderate canal narrowing, which could reasonably be expected to produce Plaintiff's reported pain.  The 2012 MRI showed progressive worsening as compared to the 2007 MRI.  While the ALJ cited some "mild" or unremarkable clinical findings to discount Plaintiff's reported levels of pain, (Tr. 334), no treating physician or examining physician ever questioned the severity of Plaintiff's reported pain complaints.  Though never hospitalized for those complaints, she did seek emergency room treatment on multiple occasions.

The ALJ's failure to explicitly acknowledge that Dr. Martinez was a treating physician adds to the grounds for remand, as it is unclear whether the ALJ applied the appropriate deference prior to rejecting his opinions outright.

### b.  Agency Consultant Dr. Fritzhand

Plaintiff underwent a one-time consultative examination by Dr. Martin Fritzhand in March 2011, ten months prior to her January 2012 MRI and prior to her treatment by Dr.

---

[3]There is no evidence in the record other than Plaintiff's testimony concerning the risks of surgery.  Dr. Asghar's notes merely state that the risks of surgery were reviewed.

Foote. (Tr. 319-327). Dr. Fritzhand noted that Plaintiff had a reduced range of motion in her neck and lower spine, but that she was able to bend at the waist to 90 degrees. (*Id.*). He also found normal strength and sensation in her arms and legs, a normal gait, no joint abnormalities, no evidence of nerve root damage, and normal neurological findings. (*Id.*). An x-ray of Plaintiff's lower spine was unremarkable. (*Id.*). Dr. Fritzhand diagnosed chronic pain syndrome, and opined that she was capable of "at least a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects." (Tr. 321). He further opined that she would have no difficulty reaching, grasping, or handling objects, no visual or communication limitations, and no environmental limitations. (*Id.*).

The ALJ relied chiefly on Dr. Fritzhand's opinion in formulating Plaintiff's physical RFC, giving it "significant weight" on grounds that his opinions were "consistent with the claimant's unremarkable physical examination findings throughout the medical record and conservative treatment history for her neck and back pain." (Tr. 28). However, Dr. Fritzhand's diagnosis of "chronic pain syndrome" is not consistent with the rest of the medical record, and Dr. Fritzhand's conclusions, made without benefit of critical objective and clinical records, also were not well supported.

The ALJ's selective reading of Plaintiff's "unremarkable" findings ignores the ample evidence of abnormal findings, including the long-standing pursuit and exhaustion of every non-surgical treatment option offered to Plaintiff. For example, the ALJ referred to "normal" findings by Dr. Asghar in February 2012 that included a normal gait, ability to walk on her toes, normal sitting balance, and denial of swelling, muscle pain or joint stiffness, without adequately discussing the more significant abnormal findings and objective evidence that led Dr. Asghar to recommend surgery.

In addition to the significant weight given to Dr. Fritzhand's opinions (which articulated relatively vague parameters concerning Plaintiff's abilities to engage in "at least moderate" amounts of various postural activities), the ALJ gave "some weight" to the opinions of two non-examining agency consultants, Drs. Gallagher and Rosenfeld, both of whom opined that Plaintiff could perform light level work with only occasional stooping, and an ability to alternate sitting/standing every hour. (Tr. 28, *see also* Tr. 97-99, 117-119). Like Dr. Fritzhand, Dr. Gallagher rendered his opinion in 2011, without benefit of the later objective MRI evidence or other 2012 records. Although Dr. Rosenfeld rendered his identical opinion on reconsideration in March 2012, at which point he had access to the January 2012 MRI and February 2012 clinical notes, the additional evidence of "advanced multilevel DDD with cord compression at C4-5" was noted but not otherwise discussed.

On the record presented, the undersigned agrees that the ALJ's greater reliance on non-examining sources who did not review the complete record than over the opinions of Plaintiff's treating physicians was reversible error. In March 2011, Dr. Fritzhand lacked access to the results of Plaintiff's physical therapy at Drake, including the positive objective testing for cervical radiculopathy. Similarly, Dr. Gallagher had no access to the January 2012 MRI showing cervical foraminal and disc damage with cord compression, or to Dr. Foote's treatment records, or to the cervical spine x-ray showing a straightening of lordosis, consistent with muscle spasms. Dr. Gallagher also lacked access to the detailed functional capacities evaluation performed by Cynthia Lear and endorsed by Dr. Foote, nor did she see Dr. Asghar's records showing cervical radiculopathy and recommending surgery. Dr. Rosenfeld, the second non-examining records reviewer, provided opinions identical to those of Dr. Gallagher on the later date

14

of March 28, 2012. Despite that later date, the fax submission from Cynthia Lear and Dr. Foote is dated April 11, 2012, suggesting that Dr. Rosenfeld also lacked access to critical records.

In *Blakley,* the Sixth Circuit reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, an ALJ may choose to credit the opinion of a non-examining consultant like Dr. Fritzhand who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis.* Moreover, *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) requires the Commissioner to give at least the same scrutiny to the opinions of consulting sources as he does to the opinions of treating physicians.

On the record presented, the ALJ failed to comply with *Blakley* and *Gayheart*, because he did not provide "good reasons" for rejecting the treating physicians' opinions, nor did he sufficiently explain why he gave greater credit to Dr. Fritzhand and the non-examining consultants. Contrary to controlling case law, the ALJ failed to acknowledge the obvious shortcomings of Dr. Fritzhand's incomplete review of critical clinical records and objective evidence.

### 3. Mental Limitations Opinion Evidence

In her third claim of error, Plaintiff argues that the ALJ misstated a consultant's

15

opinion when formulating her mental RFC.  Although Plaintiff has been prescribed medication for anxiety, there is no dispute that Plaintiff has not undergone any counseling or specific mental health treatment, leaving the ALJ to rely solely on examining and non-examining mental health consultants.

### a. Examining Consultant Dr. Spadafora

The ALJ gave "[s]ignificant weight" to the consultative examination report of Dr. Spadafora.  Dr. Spadafora opined that Plaintiff was mildly impaired in her ability to maintain attention, concentration, and persistence, and was not impaired in her ability to understand, remember, and follow instructions.  She further opined that Plaintiff was moderately impaired in her ability to relate to others and withstand stress and pressures associated with "day-to-day activities."  (Tr. 317-318).  However, Dr. Spadafora did not offer any specific opinions concerning Plaintiff's ability to tolerate the stress and pressure of day-to-day <u>work</u> activity.  Dr. Spadafora did find that Plaintiff becomes agitated when her pain increases and she has to depend on others to do her tasks.  (Tr. 318).

In addition to crediting Dr. Spadafora, the ALJ gave "[s]ignificant weight" to the opinions of non-examining psychological consultants Drs. Lewin and Tangeman, both of whom assessed moderate work-related mental limitations.  (Tr. 28).  In addition, as previously discussed, the ALJ credited Dr. Fritzhand, who noted Plaintiff's "very depressive affect" during his physical examination and opined that he "would not be surprised if daily activities would be restricted and interests restricted by her mental status." (Tr. 321).

A second psychological examination was performed by Dr. Griffiths, who expressed similar opinions to those of Dr. Spadafora, though the ALJ gave his opinion

only "[s]ome weight." (Tr. 29). Dr. Griffiths opined that Plaintiff could perform "simple, repetitive tasks with additional consideration given to her reduced stress tolerance and difficulty around others." (Tr. 29). However, he added that the stress and pressure of day-to-day work activity may magnify her symptoms, leading to withdrawal, crying, slow work performance, and interference with her ability to get along with others. (Tr. 369). Like Dr. Spadafora, Dr. Griffiths found a GAF of 55, consistent with "moderate" symptoms.

Plaintiff points out that the ALJ incorrectly misrepresented Dr. Spadafora's opinion that Plaintiff had a "mild" impairment in her ability to "respond to workplace stress and pressure," because Dr. Spadafora actually opined that Plaintiff had a "moderate" impairment in her ability to "withstand pressures associated with day-to-day activities" with no mention of what level of impairment would be anticipated with the increased pressures of having to return to full-time work. (Tr. 29, 318). Plaintiff argues that "it is rational to project 'marked' limitations [in the ability to withstand stress] in the more stressful environment of a work environment…." (Doc. 13 at 19).

In response, the Commissioner argues that the error was harmless, based on the incorporation of some limitations into Plaintiff's mental RFC. The ALJ included limitations on Plaintiff's ability to perform at a "production pace rate" and set forth her need for few changes in a work routine setting, defined as working in a static environment. (Tr. 25).

Despite disagreeing with a portion of Plaintiff's argument, the undersigned agrees with Plaintiff that the error is not harmless but instead requires remand.

Plaintiff complains that the phrase "production pace rate" is undefined and that the VE's suggestion that Plaintiff could perform the jobs of "packer" or "inspector" would

17

appear to require some type of "production rate pace" set by the employer.  (Doc. 13 at 18).  However, any error that the VE's testimony is not compatible with the mental RFC set forth in the hypothetical is waived in light of Plaintiff's failure to challenge the VE's testimony on that issue at the time of the hearing.  *See Harper v. Sec'y of HHS*, 978 F.2d 260, 265 (6th Cir. 1992).  In her reply, Plaintiff asserts that she did not waive the issue based upon other questions asked of the VE.  (Tr. 74).  However, because Plaintiff never challenged the VE's testimony that the jobs of packer and inspector were consistent with the hypothetical that precluded a "production rate pace," I agree with the Commissioner that the issue is waived.

Nonetheless, remand is warranted for the ALJ to more fully consider Plaintiff's ability to tolerate the stress of work, including but not limited to an assessment of her likely absenteeism rate and/or the rate at which she may be off task.  (*See* Tr. 73).  In that sense, the ALJ's misinterpretation of Dr. Spadafora's assessment is not harmless.  As Plaintiff points out, there is ample evidence that increased activity results in increased pain complaints, and that increased pain is likely to translate into increased irritability and lower stress tolerance.  (*See, e.g.*, Tr. 54-55, 318, 369, 448).

### 4.  Credibility and Pain Complaints

Plaintiff's disability claim primarily rests upon chronic pain complaints.  Subjective complaints of pain may support a claim for disability.  *See Duncan v. Sec'y of HHS*, 801 F.2d 847, 852 (6th Cir. 1986).  However, in cases in which complaints of disabling pain are not fully supported by medical evidence, the credibility of the claimant is often critical.  *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990)(Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and

reflex reactions."); *Daniels v. Com'r of Soc. Sec.*, 2011 WL 2110145 at*4 (S.D. Ohio May 25, 2011)(normal neurological findings or other results of objective testing may be considered in determining credibility of subjective complaints, citing *Cross v. Com'r of Soc. Sec.*, 373 F. Supp.2d 724, 732 (N.D. Ohio 2005)).

Here, the ALJ found:

> "The claimant's allegations are determined to be less than fully credible. The nature and degree of pain and functional limitations alleged by the claimant is not supported by medical and non-medical sources. Her accident on the bus occurred over 11 years ago. Since then, she has not undergone either neck or back surgery. The claimant had some relatively conservative treatment such as epidural injections and physical therapy. However, she has not received any medical care for her neck or back pain in over one year, nor has she required any recent hospitalization. Diagnostic test results and physical examination findings have been unremarkable. For example, in July of 2011, the claimant had a full range of motion in the neck without spasm or significant pain, "some' lumbosacral tenderness, a negative straight leg raise, and no acute distress …. Despite her allegations of disabling pain, the claimant engages in a variety of daily activities. For example, she testified that she takes care of her 12-year-old son, watches him play sports at school events, goes shopping, and does household chores such as cooking and laundry.

(Tr. 27).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

19

The undersigned has previously discussed why the ALJ's references to Plaintiff's "relatively conservative treatment" and recent "gap in treatment" do not constitute evidence sufficient to fully discount Plaintiff's complaints.  Unlike many cases of disability based upon back pain, in this case both objective and clinical records *generally* support Plaintiff's pain complaints.  Although one can find some inconsistencies, particularly prior to January 2012, the ALJ's errors in dismissing the treating physicians' opinions and unfairly crediting Dr. Fritzhand clearly colored his credibility determination.  While the lack of mental health treatment is a fair basis for discounting the Plaintiff's credibility concerning her mental impairments, other grounds cited by the ALJ are not as well supported.

For example, the ALJ cited Plaintiff's activities of daily living, including taking care of her 12-year-old son, shopping, and cooking.  However, "an RFC is not determined in light of what a claimant might be able to unreliably or intermittently accomplish, but serves as a measure of the claimant's capability for sustained work activity."  *Gabbard v. Com'r of Soc. Sec.*, Case No. 3:11-cv-426, 2012 WL 5378747, at *14 (S.D. Ohio Oct. 30, 212).  The ALJ was certainly permitted to consider Plaintiff's activities of daily living, but it was not appropriate for the ALJ to completely ignore her testimony that her limited daily activities are even further limited by her pain level.  For example, she can only cook "in increments," her son assists her in shopping, her son and husband both assist her in doing laundry, and she requires her TENS unit and days of rest whenever she watches her son play a sport.  (Doc. 13 at 13; Tr. 57).

The Defendant again argues that any error was harmless, but the Court cannot agree in light of the record as a whole. Despite the deference ordinarily given to credibility findings and the relatively low bar that constitutes the "substantial evidence"

test, reassessment of Plaintiff's credibility is required because the ALJ clearly mischaracterized the record.

### III. Conclusion and Recommendation

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed." *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added).

Claims of disability based on chronic back pain are common. As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling). This is not a case in which all factual issues have been resolved.

For the reasons discussed above, **IT IS ORDERED THAT** Defendant's decision be **REVERSED** and **REMANDED** for further consideration under Sentence Four, consistent with this Opinion, and that this case be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge